## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS, INC., *et al*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>(Jointly Administered) |
| ERIC D. GREEN, as Trustee of the Takata Airbag<br>Tort Compensation Fund,<br><br>Plaintiff,<br><br>v.<br><br>MITSUI SUMITOMO INSURANCE<br>COMPANY, LIMITED,<br><br>Defendant. | Adv. Pro. No. 20-51004 (BLS)<br>Re: Adv. Docket No. 37 |

## <u>OPINION</u>

Plaintiff Eric D. Green (the "Trustee"), as trustee for the PSAN PI/WD Trust,

d/b/a/ the Takata Airbag Tort Compensation Trust Fund (the "Trust") filed a

complaint seeking declaratory relief regarding the insurance obligations of

Defendant Mitsui Sumitomo Insurance Company, Limited ("MSI") to the Trust.

The Trustee claims that his Complaint seeks to enforce MSI's obligations to the

Trust under the terms of the confirmed Plan and Confirmation Order.  MSI argues

---

[1] The Debtors in these cases are Takata Americas; TK Finance, LLC; TK China, LLC; TK Holdings, Inc.; Takata Protection Systems Inc.; Interiors in Flight Inc.; TK Mexico Inc.; TK Mexico LLC; TK Holdings de Mexico, S. de R.L. de C.V.; Industrias Irvin de Mexico, S.A. de C.V.; Takata de Mexico, S.A. de C.V.; and Strosshe-Mex, S. de R.L. de C.V. (collectively, the "Debtors").

that the dispute at hand involves insurance coverage claims under the terms of the insurance policies issued by MSI, which are beyond this Court's jurisdiction and, pursuant to a forum selection clause, must be determined by a court in Japan.

Before the Court is MSI's motion to dismiss the Trustee's Complaint under Fed.R.Civ.P. 12(b)(1) [lack of subject matter jurisdiction], 12(b)(2) [lack of personal jurisdiction], 12(b)(3) [improper venue], 12(b)(5) [insufficient service of process], and 12(b)(7) [failure to join a party under Rule 19] (the "Motion to Dismiss").[2]  The Trustee opposes the Motion to Dismiss.

The Motion to Dismiss sets forth numerous grounds for dismissal, but the Court focuses on two primary issues in this Opinion:  (i) whether the relief requested in the Complaint asserts core or non-core issues, and (ii) whether the Court must enforce the forum selection clause in the MSI insurance policies.[3]  For the reasons set forth herein, the Court concludes that the claim for declaratory relief asserted in the Complaint is an insurance coverage dispute under the MSI insurance policies and is not a core proceeding.  The Court further concludes that the coverage dispute must be resolved by a Japanese Court pursuant to the forum selection clause in the MSI insurance policies.  The Motion to Dismiss will be granted.

---

[2] Adv. Docket No. 37.

[3] Based on the Court's decision herein, the Court does not reach today whether this Court has personal jurisdiction over MSI or whether the Trustee has failed to join an indispensable party. This Court previously held that service was sufficient (Adv. Docket No. 21) and the District Court denied MSI's request to appeal the interlocutory order (Adv. Docket No. 52).

## BACKGROUND AND FACTUAL ALLEGATIONS[4]

Prior to commencing these Chapter 11 proceedings, Takata was a leading global developer and manufacturer of automotive safety and non-safety systems, including airbags and seatbelts. Among other products, Takata manufactured airbag inflators containing phase-stabilized ammonium nitrate ("PSAN"), which had the potential to rupture upon airbag deployment, causing death and serious injury to automobile occupants. In response to multiple reports of injuries caused by PSAN inflators in vehicles, the National Highway Traffic Safety Administration ("NHTSA") initiated the largest product recall in U.S. history.

On June 25, 2017 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[5]

---

[4] The Background and Factual Allegations included herein are based upon the Complaint, the record in this bankruptcy case, and documents integral to or explicitly relied upon in the Complaint. In *W.J. Bradley Mortgage Capital, LLC*, the Court wrote:

> In deciding a motion to dismiss, courts generally only consider the allegations contained in the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). An exception exists for a "'document integral to or explicitly relied upon in the complaint' ... 'without converting the motion to dismiss into one for summary judgment.'" *Schmidt*, 770 F.3d at 249 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ). "'The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here the plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). It is important to note that the critical analysis lies in "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

*Miller v. Bradley (In re W.J. Bradley Mortg. Capital, LLC*, 598 B.R. 150, 164 (Bankr. D. Del. 2019). Although *Bradley* considered a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court finds the analysis equally applicable to this Motion to Dismiss.

[5] Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Declaration of Scott E. Caudill in Support of Debtors' Chapter 11 Petitions and First Day Relief, dated June 25, 20178 [Main Case Docket No. 19].

(a)    <u>MSI Insurance Policies</u>

MSI is a Japanese corporation with its headquarters in Tokyo, Japan.[6]  Prior to the Petition Date, MSI issued certain "claims made" policies to Takata Corporation in Japan covering periods from March 2015 through March 2018 (the "MSI Policies").[7]  The MSI Policies detail the procedures that must be followed in the event of an occurrence, claim or suit.

The record reflects that the 2015 MSI Policy and the 2016 MSI Policy are second layer policies that provide excess insurance above first layer policies issued by Tokio Marine & Nichido Fire Insurance Co., Ltd. ("Tokio Marine").[8]  MSI describes the policies (attached as exhibits to the Motion to Dismiss) as follows:

> Both first layer Tokio Marine policies (the "Tokio Marine Policies") carry $35 million in aggregate limits, with the 2015 Tokio Marine Policy including a $45 million aggregate indemnity deductible and the 2016 Tokio Marine Policy including a $55 aggregate indemnity deductible.  When triggered, the 2015 MSI Policy provides $30 million aggregate limits; the 2016 MSI Policy provides $45 million in aggregate limits.[9]

> The 2017 MSI Policy contains a per-occurrence self-insured indemnity retention of $15 million and an aggregate self-insured indemnity retention of $55 million (collectively, the "SIRs").[10]

> Specifically, the 2017 MSI Policy contains the following language regarding Takata's obligation to satisfy a Self-Insured Retention ("SIR") as a pre-condition to coverage:

---

[6] Complaint ¶10.

[7] Policy No. NE61683053 covered March 31, 2015 to March 31, 2016 (the "2015 MSI Policy"), Policy No. NE69378135 covered March 31, 2016 through March 31, 2017 (the "2016 MSI Policy"), and Policy No. NE69376832 covered March 31, 2017 to March 31, 2018 (the "2017 MSI Policy"). .

[8] The Tokio Marine Policies appear at Main Case Docket No. 4201. *See also* the Debtors' Disclosure Statement for the Plan, Main Case Docket No. 1630, § 3.4.

[9] MSI Brief, Adv. Docket No. 38, ¶ 14.

[10] *Id.* ¶ 15.

1. This Insurance shall only apply:

   (a) In excess of any deductible amounts shown in the Declaration. The deductible amounts shown in the Declaration apply to all damages as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence", or;

   (b) In case that the total amount of "Annual Aggregate Retention" exceeds USD 55,000,000.

2. As used in this endorsement;

   (a) "Annual Aggregate Retention" means the total amount:

      (1) **which is actually paid by any insured** as an indemnity for a claim which is made against any insured during the policy period, or;

      (2) **which is actually paid by** "Fund" during the policy period and is admitted by use, except for the amount identified as an indemnity for a claim made against any insurance prior to the beginning of the policy period.

   (b) "Fund" means the personal injury restitution fund established by any insured based on the order from the U.S. Department of Justice dated 13th January 2017.[11]

Each MSI Policy contains an endorsement providing that:

Any dispute pertaining to the interpretation, application or construction of this insurance contract shall be filed and resolved solely in a Japanese Court; and the law applicable to resolution of such dispute shall be the law of Japan.[12]

---

[11] *Id.* ¶ 16 (citing 2017 MSI Policy Endorsement 21 (emphasis added)).

[12] *Id.* ¶ 18; Ex. A (2015 MSI Policy, Endorsement 11); Ex. B (2016 MSI Policy, Endorsement 10); and Ex. C (2017 MSI Policy, Endorsement 10) (the " MSI Jurisdiction Clauses").

(b)    <u>Plan Negotiations and Confirmation</u>

On November 3, 2017, the Debtors filed the Joint Chapter 11 Plan of TK Holdings, Inc. and its Affiliated Debtors.[13]  A cornerstone of the Plan is the structure for resolving the claims of victims who were killed or seriously injured by Takata's products (the "PI/WD Claims").[14]

On February 6, 2018, MSI filed an objection[15]  to confirmation of the Proposed Plan contending that it was not "insurance neutral" with respect to MSI, and asserting in particular that the Proposed Plan failed (i) to expressly detail how the Trust would honor the Jurisdiction and Choice of Law Clauses in the MSI Policies; (ii) to explain how the Trust intended to satisfy the SIR amounts in the MSI Policies, and (iii) to articulate how the procedures in the Plan Documents correlated to those required in the MSI Policies.[16]

In response to MSI's objection and many other objections, the Debtors amended the Plan Documents. The Fifth Amended Plan, filed on February 20, 2018,[17] reflected amendments to, *inter alia*, the Insurance Neutrality Provisions. Specifically, the Insurance Neutrality Provision of the Debtors' Plan was modified in the Fifth Amended Plan to provide as follows:

---

[13] Main Case Docket No. 1108 (the "Proposed Plan"). The Proposed Plan and all amendments and supplements thereto, as well as the Disclosure Statement, as referred to herein as the "Plan Documents."

[14] Except as otherwise noted, all capitalized terms have the definition set forth in the Plan. As used in the Complaint, "PI/WD Claims" means claims alleging personal injuries or wrongful death allegedly caused by airbag inflators, seatbelts, or other products developed, designed, manufactured, marketed, or sold by the Debtors. (Compl. ¶ 2, n. 2.)

[15] Main Case Docket No. 1946 (the "MSI Plan Objection").

[16] MSI Plan Objection, ¶ 13.

[17] Main Case Docket No. 2116 (the "Fifth Amended Plan" or sometimes the "Plan").

(i)     Nothing contained in the Plan, the Plan Documents, or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (a) the rights or obligations of any of the Insurers or (b) any rights or obligations of the Debtors arising out of or under any Insurance Policy. For all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Insurance Policies shall control.

(ii)    For the avoidance of doubt, nothing contained in the Plan, the Plan Documents, or the Confirmation Order shall operate to require any PI/WD Insurance Company to indemnify or pay the liability of any Protected Party that it would not have been required to pay in the absence of this Plan. This subparagraph (ii) in no way modifies, alters or limits the rights and/or obligations set forth in subparagraph (i) above.

(iii)   None of (a) the Bankruptcy Court's or District Court's approval of the Plan or Plan Documents, (b) the Confirmation Order or any findings and conclusions entered with respect to confirmation, nor (c) any estimation or valuation of any PSAN PI/WD Claims or Trust Administered Claims, either individually or in the aggregate in the Chapter 11 Cases, shall, with respect to any insurance company, constitute a trial or hearing on the merits or an adjudication or judgment with respect to any Trust Claim.[18]

As part of negotiations, the Debtors also clarified the language in Section

5.10(f) of the Plan (the "Insurance Rights Transfer Provision"); in particular,

subparagraph 5.10(f)(iii) was revised to state:

The PSAN PI/WD Trust shall satisfy, to the extent required under applicable law, any retrospective premiums, deductibles, and SIRs arising in any way out of any and all PSAN PI/WD Claims or Trust Administered Claims."[19]

---

[18] The Fifth Amended Plan, § 5.10(x). This section, together with paragraph 59 of the Confirmation Order, are referred to herein as the "Insurance Neutrality Provisions."

[19] Fifth Amended Plan, § 5.10(f)(iii).

MSI also points out that the Retention of Jurisdiction provision of the Plan was amended to include the phrase "to the extent permitted under applicable law" so that §11.1(a)(xi) provides in pertinent part that:

> [T]he Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan . . . for, among other things, the following purposes: ….
>> (xi) to hear and resolve disputes related to the Insurance Rights Transfer or the PI/WD Insurance Rights, to the extent permitted under applicable law.[20]

On February 20, 2018, the Debtors filed a revised proposed confirmation order, which amended paragraph 59 - - the insurance neutrality section therein - - to make it consistent with the revisions to the Plan referenced *supra*.[21]

On February 21, 2018, the Court entered an Order[22] confirming the Fifth Amended Plan.   The Plan became effective on April 10, 2019 and, on that date, the Trust was established.

The Confirmation Order stated that the Insurance Rights Transfer was "valid and enforceable under sections 541(d), 1123(a)(5)(B) and 1129(a)(1) of the Bankruptcy Code" and that "the Bankruptcy Code preempts any anti-assignment contractual provisions and applicable state law."[23]

---

[20] Fifth Amended Plan, § 11.1(a)(xi).
[21] Main Case Docket No. 2118-2.
[22] Main Case Docket No. 2120 (the "Confirmation Order").
[23] Confirmation Order ¶ 55.

(c)     Post-confirmation

Since its formation, the Trust has received hundreds of claims and it continues to evaluate claims on a rolling basis.[24]  Post-confirmation, the Trustee sought to recover insurance proceeds from MSI for the benefit of the claimants.  On March 30, 2018, counsel for the Trust provided MSI with notice of the PI/WD Claims,[25] and on April 18, 2018, Mitsui Sumitomo Marine Management (U.S.A.), Inc. ("MSMM") acknowledged receipt of the notice.[26]  Thereafter, the Trust and MSMM communicated about coverage obligations under the MSI Policies.  The Trust sought consensual resolution of its request for payment of over $53 million due under the Policies.  On September 22, 2020, MSI formally denied coverage for the Trust's claim on the basis that the MSI Policies had not yet been triggered because their underlying limits had not been exhausted.[27]  In the letter, MSI argued (among other things), that even if the PI/WD Claims otherwise were eligible for coverage under the Policies, MSI was liable only for the amount of the Trust's actual distribution payments for compensable claims, rather than the full value of those claims.

On September 30, 2020, the Trustee filed a Motion to Enforce Plan and Confirmation Order before this Court.  The Court issued a letter ruling denying the

---

[24] Compl. ¶ 25.
[25] Trustee Br. (Adv. Docket No. 40), Ex. A.
[26] *Id.,* Ex. B.
[27] *Id.*, Ex. C.

Trustee's motion, concluding that the Trustee's claims must be brought through an adversary proceeding.[28]

On November 5, 2020, the Trustee initiated this adversary proceeding. On November 19, 2020, the Trustee filed a motion seeking an order authorizing the Trustee to serve process on MSI by sending a copy of the summons and complaint to MSI's U.S. counsel via electronic and U.S. mail.[29] MSI objected to the Service Motion, but the Court authorized alternate service.[30]

On March 15, 2021, MSI filed the instant Motion to Dismiss.[31] The Trustee filed a response opposing the Motion the Dismiss.[32] MSI filed a reply brief.[33] The Court heard oral argument and the matter is now ripe for determination.

## **JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. Whether the issues raised in this proceeding fall within the Court's core or non-core jurisdiction is discussed, *infra*. The Bankruptcy Court has the power to enter an order on a motion to dismiss even if the matter is non-core or if the Court has no authority to enter a final order on the merits.[34]

---

[28] Letter Ruling Regarding Motion to Enforce the Order Confirming Debtors' Fifth Amended Plan, Oct. 23, 2020, Main Case Docket No. 4245.

[29] Adv. Docket No. 5 (the "Service Motion").

[30] Adv. Docket No. 21 (the "Service Order"). MSI filed a motion with the District Court seeking leave to appeal the Service Order. On August 26, 2021, the District Court denied MSI's motion for leave to appeal. Adv. Docket No. 52.

[31] Adv. Docket No. 37.

[32] Adv. Docket No. 40.

[33] Adv. Docket No. 41.

[34] *Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.),* 2014 WL 1320145, *2 (Bankr. D. Del. April 2, 2014) (citing *In re Trinsum Grp., Inc.*, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After Stern v. Marshall, the ability of bankruptcy judges to enter interlocutory orders in proceedings... has been reaffirmed...")). *See also Boyd v. King Par, LLC*, Case No. 11-CV-1106, 2011

## DISCUSSION

(1)    Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction

The Trustee's Complaint requests that the Bankruptcy Court enter judgment declaring that MSI must pay the full value of the PI/WD Claims and that (i) MSI's obligations to indemnify the Trust, and (ii) the exhaustion of any self-insured retentions or deductibles shall not be measured by amounts paid by the Trust in connection with the PI/WD Claims.[35]  MSI argues that the issues raised in the Complaint are insurance coverage disputes which do not fall within this Court's jurisdiction. In response, the Trustee argues that this dispute concerns enforcement of the plain language of the Plan and Confirmation Order, which lies at the very heart of the bankruptcy case and clearly falls within this Court's core bankruptcy jurisdiction.

(a) Standard –motion to dismiss for lack of subjection matter jurisdiction

"A motion to dismiss under Rule 12(b)(1) is an objection to the federal court's power to adjudicate a case."[36]  "The plaintiff bears the burden of persuading the court that it has jurisdiction."[37]

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.[38]  In a facial challenge, "the court assumes

---

WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011)("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment...does not deprive the bankruptcy court of the power to entertain all pretrial proceedings . . . .").

[35] Compl., p. 13.

[36] *Emerald Capital Advisors Corp. v. Karma Automotive LLC (In re FAH Liquidating Corp.)*, 567 B.R. 464, 466 (Bankr. D. Del. 2017) (citing *Petruska v. Gannon University*, 462 F.3d 294, 302 (3d Cir. 2006)).

[37] *Id.* (citing *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

11

that the allegations in the complaint are true but examines the pleadings to determine if they present a case within the court's jurisdiction."[39]  A factual attack on jurisdiction argues that the allegations in the pleading are false.  In reviewing a factual attack on jurisdiction, the court may consider evidence outside the pleadings and satisfy itself as to the existence of its power to hear the case.[40]

The parties here submitted the MSI Policies and other exhibits with their respective briefing.  The Court will consider the exhibits to the extent necessary to address any factual dispute regarding its jurisdiction.

(b) <u>Bankruptcy jurisdiction</u>

Bankruptcy jurisdiction is often a thorny issue because bankruptcy courts are created by Congress under Article I and derive their authority from Congress through federal statutes.[41]  The source of bankruptcy jurisdiction is 28 U.S.C. § 1334 and 28 U.S.C. § 157.  Section 1334 grants jurisdiction over bankruptcy cases and proceedings to the district courts; then, the district courts may refer cases and proceedings falling within that section to the bankruptcy courts.[42]  "Bankruptcy

---

[38] *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

[39] *FAH Liquidating*, 567 B.R. at 467 (citing *Democracy Rising PA v. Celluci*, 603 F.Supp.2d 780, 788 (M.D. Pa. 2009)).

[40] *Gotha v. United States*, 115 F.3d 176-178-79 (3d Cir. 1997) (citing *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891(3d Cir. 1977)).

[41] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004).  "Congress has vested "limited authority" in bankruptcy courts." *Id.* (citing *Bd of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 40, 112 S.C. 459, 116 L.Ed.2d 358 (1991).  Even when exercising statutory jurisdictional powers, a bankruptcy court must consider whether its exercise of jurisdiction comports with Article III of the Constitution. *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 135 (3d Cir. 2019) (discussing *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011)).

[42] *Resorts*, 372 F.3d at 161.

court jurisdiction potentially extends to four types of title 11 matters, pending

referral from the district court:

(1)     cases under title 11 (referring to the bankruptcy petition itself);

(2)     proceedings arising under title 11 (referring to steps within the
        bankruptcy case and to any sub-action within the case that may raise a
        disputed legal issue);

(3)     proceedings arising in a case under title 11 (referring to proceedings
        that are not based on any right expressly created by title 11, but
        nevertheless would have no existence outside the bankruptcy case);
        and

(4)     proceedings related to a case under title 11 (referring to proceedings in
        which the outcome could conceivably have any effect on the estate
        being administered in bankruptcy)."[43]

The first three categories comprise the "core" jurisdiction of the bankruptcy

courts. "Congress has vested the bankruptcy courts with full adjudicative power

with regard to 'core' proceedings,"[44] giving bankruptcy courts "comprehensive power

to hear, decide and enter final orders and judgments."[45] The final category above

consists of "non-core" or "related-to" proceedings, in which bankruptcy courts'

"adjudicatory power is limited to hearing the dispute and submitting proposed

findings of facts and conclusions of law to the district court."[46]

---

[43] *Resorts*, 372 F.3d at 162 (citing *In re Guild & Gallery Plus*, 72 F.3d 1171, 1175 (3d Cir. 1996)).

[44] *Resorts*, 372 F.3d at 162 (citing 28 U.S.C. § 157(b)(1)).

[45] *Longview Power, LLC v. First American Title Ins. Co. (In re Longview Power, LLC)*, 515 B.R. 107, 113 (Bankr. D. Del. 2014) (citing *Halper v. Halper*, 164 F.3d 820, 836 (3d Cir. 1999)).

[46] *Id.* (internal punctuation omitted).

(c) Does the Complaint assert core bankruptcy issues?

When determining whether a matter is core or non-core, bankruptcy courts consult two sources.[47]  "First, § 157(b) provides an illustrative but non-exclusive list of proceedings that may be considered core."[48]  "Second, even if a proceeding is not listed [in § 157(b)], a proceeding is core (1) if it invokes a substantive right provided by title 11, or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."[49]

The Trustee asserts that the issue in the Complaint falls within the enumerated core proceedings set forth at 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") and § 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate").  The Court observes that the list in § 157(b)(2) does not expressly include insurance coverage disputes.[50] Because such disputes generally are based upon state law (or, in this case, foreign law), the catch-all provisions of § 157(b)(2)(A) and (O) cannot alone render such issues as "core" proceedings. Other courts have declined to include a cause of action created solely by state law as a core matter under § 157(b)(2)(A) or (O), even if the issue arguably falls within the literal wording of the catch-all provisions.[51]

---

[47] *Longview Power*, 515 B.R. at 113 (citing *Halper*, 164 F.3d at 836).

[48] *Id.*

[49] *Id.*

[50] *Longview Power*, 515 B.R. at 113.

[51] *In re Insilco Tech., Inc.*, 330 B.R. 512, 521 (Bankr. D. Del. 2005) (citing *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir. 1986) ("State law contract claims that arguably fall within these catch-all provisions have been held to be 'noncore' 'related proceedings' under § 157(c). . . .  [W]e are persuaded that a court should avoid characterizing a proceeding as "core" if to do so would raise constitutional problems.")).

The Trustee also argues that this claim is a proceeding that could only arise in a bankruptcy case because it requires interpretation of the provisions of the Plan and Confirmation Order which prevents MSI from alleging that the bankruptcy case altered MSI's obligations under the Policies.

But MSI claims that the Trustee's request for a declaratory judgment requires the Court to determine whether a deductible or self-insurance retention has been satisfied, or is a condition precedent for insurance coverage under the terms of the MSI Policies.  In short, MSI asserts that the declaratory judgment claim in the Complaint is an insurance coverage dispute which can arise outside of a bankruptcy case.

Caselaw supports MSI's position.  In *PRS Insurance Group*,[52] the bankruptcy court decided that a chapter 11 trustee's post-confirmation action against insurers for breach of two reinsurance agreements and bad faith refusal to pay claims were not disputes that could arise only in the context of a bankruptcy case.[53]  The Court noted that such claims arose under state law and were not core.[54]

In *Stone & Webster*,[55] the debtors argued that the insurance coverage dispute could not exist outside of bankruptcy because it was interrelated to a court-approved settlement between the debtors and third parties who filed proofs of claim

---

[52] *Logan v. Westchester Fire Ins. Co (In re PRS Ins. Grp., Inc.)*, 445 B.R. 402 (Bankr. D. Del. 2011).

[53] *Id.* at 405.

[54] *Id.*

[55] *SWE Consol. SWINC Estate v. Ace USA, Inc. (In re Stone & Webster, Inc.)*, 367 B.R. 523 (Bankr. D. Del. 2007).

for environmental clean-up costs.[56]  The debtors argued that the insurance policies

covered the debtors' environmental liabilities.[57]  In the third party settlement, the

debtors agreed to pay the claimants a set amount plus 50% of any recovery from the

insurers.[58]  Post-confirmation, the debtors' successor-in-interest sued the insurers

for damages and a declaration that the policies covered environmental liabilities.[59]

The *Stone & Webster* Court found that the proof of claim and bankruptcy court-

approved settlement were only peripheral to the proceeding against the insurer.[60]

The *Stone & Webster* Court also decided that "the prospect that a claim may provide

economic benefit to the estate does not factor into the determination of whether a

claim is core or non-core."[61]  The court held that the matter was non-core, deciding

that "[a]t its root, [the] proceeding is a plain breach of contract claim governed by

state law."[62]

   The plaintiff in *Longview Power*[63] also argued that a pre-confirmation action

was a core proceeding that could only arise in a bankruptcy case because it was

---

[56] *Id.* at 528-29. Two parties filed proofs of claim in an amount of more than $20 million for costs incurred for environmental cleanup of the debtors' properties. *Id.* at 524. The court approved the settlement between the debtors and the claimants over the insurer's objection, which had argued that the settlement infringed on its rights under the policies. *Id.* The *Stone & Webster* Court also approved the debtors' plan which explicitly reserved the insurer's rights, claims and/or defenses in any subsequent litigation regarding the insurance policies. *Id.*

[57] *Id.* at 524.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 528-29.

[61] *Id.*

[62] *Id.* at 529.

[63] *Longview Power, LLC v. First American Title Ins. Co. (In re Longview Power, LLC)*, 515 B.R. 107, 113 (Bankr. D. Del. 2014). The debtor amended its complaint to add the collateral agent as nominal plaintiff "solely in its capacity as first-lien asset collateral agent under the Longview Credit Agreement . . . and the contemporaneous collateral agency and intercreditor agreement." *Id.* at 109-10. In connection with the debtors' entry into the Longview Credit Agreement, the collateral agent

necessary to determine plan feasibility.[64]  Contractors who were involved in the design, supply, construction, and commissioning of the debtors' power plant filed mechanics' liens and argued that those mechanics' liens were senior to the lenders' liens arising from their credit agreement with the debtors.[65]  The *Longview Power* debtors' plan proposed to pay the mechanics' lien claims from the proceeds of a title insurance policy obtained by the lenders in connection with the credit agreement.[66] To accomplish this, the plan provided for the collateral agent to assign cash proceeds from the title insurance policy to a trust formed by the debtors for the benefit of the contractors holding mechanics' liens.[67]  The court concluded that the "the question of whether coverage exists under the Title Insurance Policy is non-core."[68]  "The bottom line is that the coverage dispute implicates state law rights and defenses as between [the insurer] and the Collateral Agent."[69]  The *Longview Power* Court rejected the debtors' argument that the matter was core because a coverage determination was necessary to establish plan feasibility and a condition

---

obtained a title insurance policy for the benefit of the lenders.  *Id.* at 110.  None of the debtors were a party to the title insurance policy.  *Id.*

[64] *Longview Power*, 515 B.R. at 113.  The complaint in *Longview Power* also included a count to determine whether proceeds of the title insurance policy were property of the estate under Bankruptcy Code § 541.  *Id.* at 112.  The insurer agreed that the § 541 issue was a core matter but argued that the court should consider the coverage issue separately.  *Id.* The Third Circuit has determined that a "single cause of action may include both core and non-core claims" and "[t]he mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'" *Id.* (quoting *In re Exide Tech.*, 544 F.3d 196, 206 (3d Cir. 2008)).  The *Longview Power* Court decided that the two issues were separate.  *Id.* at 115.

[65] *Id.* at 110.
[66] *Id.* at 112.
[67] *Id.*
[68] *Id.* at 115.
[69] *Id.*

precedent to confirmation.[70]  The court noted that the argument "would give debtors unfettered license to confer core status to proceedings by requiring their favorable adjudication in order to confirm a plan."[71]

Here, the Trustee relies upon the case *In re American Capital Equipment, LLC*[72] to support his claim that the matter is within the Court's core jurisdiction. The debtor in *American Capital* sought protection under Chapter 11 of the Bankruptcy Code because it had more than 29,000 asbestos-related lawsuits pending against it.[73] The insurer argued that the asbestos claims had no merit, but requested time to negotiate exclusively with the claimants to achieve a consensual plan of reorganization.[74]  When the debtor believed the insurer's attempt at a consensual plan would not be successful, the debtor negotiated with the asbestos claimants and filed its own plan proposing to channel the asbestos claims into a trust.[75] The insurer filed an adversary proceeding on the eve of plan confirmation seeking a declaration that it had no further duty to defend or indemnify the debtor because the debtor had breached the policies by negotiating independently with the asbestos claimants and because the plan, if confirmed, would violate the terms of the insurance contracts.[76]  When considering the insurer's motion to withdraw the reference, the *American Capital* Court held that the insurer's adversary proceeding

---

[70] *Id.*
[71] *Id.*
[72] *Travelers Cas. and Surety Co. v. Skinner Engine Co., Inc. (In re Am. Capital Equip., LLC)*, 325 B.R. 372 (W.D. Pa. 2005).
[73] *Id.* at 374.
[74] *Id.*
[75] *Id.*
[76] *Id.*

presented core issues that could not arise outside of a bankruptcy context.[77] The court determined that the insurer's adversary was not a "garden-variety insurance coverage dispute filed by a debtor, or a trustee, seeking to collect insurance proceeds in the context of a bankruptcy case. . . [instead, it was] an attempt by an insurer to avoid all liability under the insurance policies held by the debtor based solely on the debtor's negotiation and proposal of a plan."[78]

In the case at bar, the Trust seeks a declaration that MSI "must pay the full value of the PI/WD Claims and that (i) [MSI's] obligations to indemnify the Trust, and (ii) the exhaustion of any self-insured retentions or deductibles shall not be measured by amounts paid by the Trust in connection with the PI/WD Claims."[79] The Trustee frames the issue as requiring the Court to decide whether the Debtors' bankruptcy case has fundamentally altered MSI's obligations under the Policies, thus claiming the matter could only arise in the context of a bankruptcy case.  The Trustee argues that, like *American Capital*, the issues in the adversary are inextricably tied to the Debtor's Plan.

The language of the Fifth Amended Plan, however, supports MSI's position that the declaratory relief requested requires analysis of the insurance coverage under the MSI Policies, rather than the Plan itself.  In particular, the Insurance Neutrality Provisions of Section 5.10(x)(i) confirmed that the Plan and Confirmation Order do not impair, alter, supplement, change, expand, decrease, or modify the

---

[77] *Id.* at 377.
[78] *Id.*
[79] Compl. p. 13.

*rights and obligations* of the Insurers or the Debtors.  The Insurance Rights

Transfer Provision of Section 5.10(f)(iii) also provided that, to the extent required by

applicable law, the Trust is required to satisfy all deductibles and SIRs.  These Plan

provisions point the issues back to the MSI Policies.  MSI asserts that the Trustee,

as the successor to the Debtors, is being treated no differently than any other entity

(bankrupt or otherwise) who is required to prove exhaustion of primary limits or

satisfaction of  deductible and/or SIR provisions of an MSI-issued policy.  The Court

agrees.  Determining coverage under the MSI Policies is not an issue that arises

only in the context of the bankruptcy case.  The issues regarding how the Plan's

allowed claim amounts or the paid claim amounts affect MSI's coverage obligations

first requires analysis of the parties' rights and obligations under the terms of the

MSI  Policies. [80]

It is notable that the Plan's Insurance Neutrality provision preserved the

parties' rights and obligations under the MSI Policies.  Accordingly, this is not a

matter that hinges on the effect of the Debtors' post-petition actions on the insurer's

obligations, as in *American Capital*  Instead, at its root, the claim for declaratory

---

[80] In a case that considered which law to apply to a dispute regarding whether an insurance company was obligated to pay a post-confirmation trust the liquidated value of each claim or the payment amount each claim, the Court noted: "the dispute here concerns the interpretation of a payment obligation in insurance contracts entered into by the parties that significantly predate [debtor's] bankruptcy and creation of the resulting trust.  How much [insurance company] is 'obligated to pay' [debtor] has little to do with the Delaware law controlling the Trust's operation.  Rather, the Court must decide what law it should apply to interpret the *underlying* insurance contracts' payment obligation in light of [debtor's] bankruptcy and the payment percentage now paid to claimants." *Flintkote Co. v. Aviva PLC*, 177 F.Supp. 3d 1165, 1176-77 (N.D. Cal. 2016).  The Court determined that California law applied to the proceeding. *Id.* at 1178.

relief is an insurance coverage dispute, similar to the those presented in *Stone &*

*Webster* and *Longview Power* and is not a core issue.

(2)    <u>Motion to dismiss under Fed.R.Civ.P. 12(b)(3) for improper venue</u>

Because the insurance coverage dispute raised in the adversary proceeding is

non-core, MSI argues that the Court should enforce the forum selection clauses in

the MSI Policies and dismiss this case pursuant to Rule 12(b)(3).[81]  Each MSI Policy

contains an endorsement requiring that disputes related to the policies "shall be

filed and resolved solely in a Japanese Court; and the law applicable to resolution of

such dispute shall be the law of Japan."[82]

"[T]he Third Circuit has held that forum selection clauses are binding upon

bankruptcy courts in non-core proceedings."[83]  "Courts reason that the strong policy

---

[81] The Supreme Court determined that the appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*. *Atlantic Marine Constr. Co., Inc. v. U.S. District Court for the W. District of Tex.*, 571 U.S. 49, 60, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013).  The Court notes that Rule 12(b)(3) applies only when venue is "wrong" or "improper."  *Id.* at 55.  Pursuant to 28 U.S.C. § 1409(a), a non-core, related to proceeding may be commenced in the district court in which such case is pending.  Assuming (without deciding) that this matter falls within "related to" non-core jurisdiction, venue is proper.  Although MSI references Rule 12(b)(3) in its Motion to Dismiss, the Court concludes MSI's Motion to Dismiss has adequately asserted a request for dismissal under *forum non conveniens* and will consider the request under the appropriate standard.  *See Amazon Produce Network, LLC v. NYK Line*, 143 F.Supp.3d 252, 254-55 (E.D. Pa. 2015) (deciding in an admiralty case - - where personal jurisdiction and venue are conflated - - to consider a Rule 12(b)(3) motion as a motion to enforce a forum selection clause under *forum non conveniens*).

[82] *See* n. 12, *supra.* (the "MSI Jurisdiction Clauses").  Forum selection clauses are either mandatory or permissive.  *De Lage Landen Fin. Serv., Inc. v. Regan Tech. Corp.*, 2016 WL 7156441, *2 (E.D. Pa. Dec. 7, 2016).  "A mandatory forum selection clause clearly dictates that venue is proper only in the agreed upon forum  A permissive one does not limit the forum, but merely authorizes venue in a particular forum." *Id.* (citations omitted).  "A permissive forum selection clause is given less weight than a mandatory one because it does not exclusively limit the appropriate venue for litigation." *Id.* The MSI Jurisdiction Clauses are mandatory.

[83] *Giuliano v. Genesis Fin. Solutions, Inc. (In re Axiant LLC)*, 2012 WL 5614588,  *3 (Bankr. D. Del. Nov. 15, 2012) (citing  *In re Exide Tech.*, 544 F.3d 196, 206 (3d Cir. 2008) (holding that the forum selection clause would be enforced if the claims were determined to be non-core).  *See also DHP Holdings II Corp. v. The Home Depot (In re DHP Holdings II Corp.,* 435 B.R. 264, (Bankr. D. Del. 2010) ("Courts are more likely to enforce a forum selection clause in a non-core matter.").

favoring centralization of bankruptcy proceedings in bankruptcy courts does not

justify the non-enforcement of a forum selection clause in a non-core proceeding."[84]

When "parties have contracted in advance to litigate disputes in a particular

forum, courts should not unnecessarily disrupt the parties' settled expectations."[85]

Therefore, forum selection clauses are considered to be "prima facie valid" and

"should be enforced unless shown to be 'unreasonable' under the circumstances."[86]

The plaintiff bears the burden "of showing why the court should not transfer the

case to the forum to which the parties agreed."[87]

When deciding whether a forum selection clause is "unreasonable," courts

may consider whether (i) enforcement would violate a strong public policy of the

forum, (ii) the selected forum is so seriously inconvenient that it deprives a party of

its day in court, or (iii) the clause was incorporated into the contract by fraud or

overreaching.[88]

In this case, the Trustee asserts that, even if the proceeding is non-core, the

MSI Jurisdiction Clauses should not be enforced as "unreasonable" because, he

---

[84] *Axiant*, 2012 WL 5614588 at *3 (citing *Coastal Steel Corp. v. Tilghman Wheelbrator Ltd.*, 709 F.2d 190, 201-02 (3d Cir. 1983), overruled in part on other grounds by *Lauro Line v. Chasser*, 490 U.S. 495 (1989). *See also Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 837 (S.D.N.Y. 2002) (stating that the strong policy favoring the enforcement of a forum selection clause is not as strong in a core proceeding because enforcement would frustrate the bankruptcy policy of centralizing core matters).

[85] *Advanced Reimbursement Management, LLC v. Plaisance*, 2019 WL 2502931, *2 (D. Del. June 17, 2019) (quoting *Atlantic Marine*, 571 U.S. at 66. *See also DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 273 (Bankr. D. Del. 2010) (upholding a forum selection clause because it is a manifestation of the parties' preferences as to a convenient forum).

[86] *SKF USA Inc. v. Okkerse*, 992 F.Supp.2d 432, 443 (E.D. Pa. 2014) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

[87] *Atlantic Marine*, 571 U.S. at 63-64.

[88] *Axiant*, 2012 WL 5614588 at 4; *SKF USA*, 992 F.Supp. 2d at 443-44.

argues, there is a public policy in favor of requiring the U.S. Bankruptcy Courts to resolve disputes under the U.S. Bankruptcy Code or to interpret the Plan and Confirmation Order in light of U.S. Bankruptcy law.  However, for the reasons discussed in more detail in the preceding section, the issue raised in the Complaint first requires interpretation and analysis of the MSI Policies under Japanese law, rather than interpretation of the Plan or Confirmation Order.  The MSI Policies were negotiated pre-petition between Japanese companies and require application of Japanese law. Therefore, public policy would fall in favor of enforcing the forum selection clause to permit the terms of a Japanese insurance policy to be determined in a Japanese court interpreting Japanese law.

Moreover, the Plan's Insurance Neutrality Provision preserved the terms and provisions of the MSI Policies, including the MSI Jurisdictional Clauses. Dismissing the adversary proceeding to allow the matter to be brought in Japan may seem a harsh result but, as the Supreme Court held in *Atlantic Marine*, inconvenience to the plaintiff is not part of the analysis when enforcing a valid forum selection clause:[89]

---

[89] The *Atlantic Marine* Court considered the impact of a forum selection clause on a transfer venue analysis under 28 U.S.C. § 1404(a).  Generally, when evaluating the convenience of the parties and the interest of justice, a court will weigh the parties' private interests (including, for example, access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, the costs of obtaining attendance of willing witnesses and other practical problems that make trial of a case easy, expeditious and inexpensive) and public interest factors (including, for example, administrative difficulties flowing from court congestion, interest in having localized controversies decided at home). *Id.* at 62 n. 6.  Because § 1404(a) is derived from the *forum non conveniens* doctrine, courts evaluate a forum selection clause pointing to a non-federal forum in the same way. *Id.*  at 61. However, the *Atlantic Marine* Court decided that a valid forum selection clause changes the usual § 1404(a) analysis in three ways:  (i) no weight is given to the plaintiff's choice of forum (*Id.* at 63), (ii) courts should not consider the parties' private interests, because when parties agree to a forum-selection clause they waive the right to challenge the preselected forum as inconvenient or

23

> When parties agree to a forum-selection clause, they waive the right
> to challenge the preselected forum as inconvenient or less convenient
> for themselves or their witnesses, or for their pursuit of the
> litigation.[90]
> . . . .
> When parties have contracted in advance to litigate disputes in a
> particular forum, courts should not unnecessarily disrupt the parties'
> settled expectations.  A forum-selection clause, after all, may have
> figured centrally in the parties' negotiations and may have affected
> how they set monetary and other contractual terms; it may, in fact,
> have been a critical factor in their agreement to do business together
> in the first place.  In all but the most unusual cases, therefore, "the
> interest of justice" is served by holding the parties to their bargain. [91]

The Trustee, of course, did not negotiate to litigate in Japan. Courts,
however, have recognized that a trustee is bound by a debtor's prepetition
contracts.[92] This matter presents an even stronger case for finding that the Trustee
is stepping into the shoes of the Debtors in connection with the insurance policies
due to the language of the Plan's Insurance Rights Transfer provision (which
transferred, granted, and assigned any and all of the Debtors' PI/WD Insurance
Rights to the Trust)[93] and the Insurance Neutrality provision (which provides that
the Plan and the Confirmation Order did not impair, alter, supplement, change,

---

less convenient for themselves or their witnesses, or to pursue the litigation (*Id.* at 64), and (iii)
when a party bound by a forum-selection clause files in another forum, the original venue choice-of-
law rules do not apply. (*Id.* at 64-65).  The second factor is especially relevant here. Further, even if
this Court were to consider the relevant public interest factors, the Court notes *Atlantic Marine's*
comment that public interest factors "will rarely defeat a transfer motion, [so] the practical result is
that forum-selection clauses should control except in unusual cases."  As noted above, the public
policy favors allowing the Japanese insurance policies to be determined by a Japanese court.
Another public factor (familiarity of the trial judge with applicable law) also weighs in favor of
enforcement of the forum selection clause since this Court would not be familiar with Japanese law.
    [90] *Id.*  at 64.
    [91] *Id.* at 66.
    [92] *Axiant*, 2012 WL 5614588 (citing *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith,
Inc.*, 885 F.2d 1149, 1162 (3d Cir. 1989) (holding that the trustee was bound by the arbitration clause
in a pre-petition contract and noting that "[f]or the purposes of this appeal, we do not see any
relevant distinction between a forum selection clause and an arbitration clause.")
    [93] *See* Fifth Amended Plan, §5.10(f)(i).

expand, decrease or modify the Debtors' obligations under those policies).[94]  The

Debtors' obligations under the MSI Policies includes the terms of the MSI

Jurisdictional Clauses and the Trustee is bound by the Debtors' obligations under

those policies.

Accordingly, the Court concludes that the MSI Jurisdictional Clauses should

be enforced in this case.  This is not a matter within the Bankruptcy Court's core

jurisdiction and there has been no showing that the forum selection clause is

unreasonable.

For the foregoing reasons, the Motion to Dismiss will be granted.  An

appropriate Order follows.

FOR THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:  December 20, 2021

---

[94] *See id.*, § 5.10(x).